IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-CR-34 |
| | ) | (PHILLIPS/GUYTON) |
| ROBERT LEE CODY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on the defendant's Motion to Suppress Evidence Obtained as a Result of The Warrantless Search of the Defendant's Residence on January 23, 2012. [Doc. 15]. This Motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on July 12, 2012 and July 25, 2012. Cynthia Davidson, Assistant United States Attorney, was present representing the Government. Bobby Hutson, Assistant Federal Defender, was present representing the defendant, Robert Lee Cody ("Cody"). The defendant was also present. At the conclusion of the July 25, 2012 hearing, the Court took the suppression motion and related filings under advisement.

The defendant has been indicted [Doc. 1] on a single count of being a felon in possession of a firearm on January 23, 2012. Cody has moved to suppress all items of physical evidence seized on that date, including the firearm which is the basis for the Indictment, and all statements made by him, alleging that the search was in violation of Cody's Fourth Amendment rights. [Doc. 15]. In

1

response [Doc. 18], the Government alleges that police responded to a 911 call, arrested Cody on a warrant, and then conducted a protective sweep of the apartment. During the protective sweep, police found the firearm in issue. The Government also states that Cody waived his <u>Miranda</u> rights and admitted ownership of the firearm. [Doc. 18].

## I. FACTS

The Government's first witness was John Pickens ("Pickens"), an officer with the Knoxville Police Department ("KPD"). Pickens testified that his job title is patrol officer.

The facts in this case initiated with a 911 call. A recording of that call was admitted into evidence by stipulation as Exhibit 1, and later in the hearing, the call was played in Court. Pickens, however, testified that he did not hear this call.

Pickens testified that on January 23, 2012, he received a call from dispatch. The call stated that Robert Lee Cody was at 2526 Parkview Avenue, that he had guns in the residence, that the caller's children were with him, that Cody's brother was in the residence, and that Cody will run. A printout of the call as it appeared on the computer screen of Picken's cruiser was admitted as Exhibit 2. Pickens responded to the scene. But before he, along with Officer Justin Killian, approached the residence, Pickens ascertained that Cody had an arrest warrant on file. Pickens also obtained a photo of Cody through NCIC.

Pickens testified that he and Officer Killian entered the building and proceeded up the stairs to the upstairs apartment. Pickens smelled the odor of marijuana coming from under the door of the apartment. He heard what he thought was the sound of a shotgun racking. Pickens knocked on the door, and Cody answered the door. Pickens testified that he put Cody in custody "right at the door."

2

Pickens testified that he looked through the open door and could see three children in the apartment. Then a woman appeared who was identified as Cody's mother. Pickens asked her if he could "step in and talk to you about what's going on with your son right now?". She said, "sure, come in."

Pickens then entered the apartment and asked her if anyone else was in the residence. She said "no". Pickens testified that he then asked her if he could look around and make sure there is no one else inside the apartment, and she replied, "yeah, go ahead."

Pickens then did a protective sweep of the apartment. When he looked in a closet, he saw the firearm. Photos of the closet with the gun in plain view, were admitted as Exhibit 3 and Exhibit 4.

Pickens then asked Cody's mother, "Is this your stuff in this closet here?", and she replied, "no." Picken then asked her, "whose stuff is in this closet where the firearm is located?", and she said, "that's his stuff." Pickens testified that Cody, from outside, then said "that's mine."

Pickens testified that he was not questioning Cody when Cody made the statement "that's mine." Pickens then called investigators to the scene. Eventually, it was determined that the firearm was loaded. Pickens testified that no other person was found in the apartment.

On cross-examination, Pickens testified that the reported presence of guns at the premises, along with the outstanding arrest warrant for Cody, indicated danger. A photo of the building was admitted as Exhibit 5. A photo of the stairs leading up to the apartment door was admitted as Exhibit 6. Pickens testified that the building was divided into four apartments, and that the apartments shared a common entry area and staircase.

Pickens testified that the officers were wearing microphones, but they did not record.

3

Case 3:12-cr-00034-TWP-HBG   Document 23   Filed 08/09/12   Page 3 of 9   PageID #: 66

Pickens stated that the officers parked their cruisers half a block away from the building, because of the dispatch report of guns in the apartment. He stated that this affected the range of the microphones.

Officer Pickens's report of the arrest was received into evidence as Exhibit 7. Pickens testified that he cleared the apartment for officer safety because of the report in the dispatch call that there was another person in the house, as well as guns. Pickens testified that his report includes the statement, "the defendant's mother agreed to officer entry," but does not include any statement that the defendant's mother gave oral consent to clear the apartment. Pickens testified that the protective sweep was not a search. Pickens also confirmed that his report does not include a statement that officers heard the sound of a shotgun racking as they proceeded up the stairs to the apartment.

On re-direct, Pickens testified that the dispatch information he received was that Cody's brother was in the apartment, along with guns. Pickens stated that the protective sweep of the apartment took 2-3 minutes. Pickens said that the protective sweep was to make sure no one else was in the apartment, and the protective sweep was not a search. Officers did not look in drawers or kitchen cupboards, he stated.

The government's next witness was Justin Killian ("Killian"), a KPD patrol officer. Killian testified that the information on Exhibit 2 came to him in the form of the dispatch call. He did not hear the initial 911 call. He ran the NCIC of Cody and obtained Cody's photograph and learned that there was an outstanding arrest warrant on Cody.

Killian testified that as he and Pickens were moving up the stairs to the apartment door, he heard what sounded to him like "a shotgun cocking or a rifle as you rack the bolt back in it." When Cody answered the door, he and Pickens arrested Cody. Killian stayed with Cody, who was set

4

down in the stairwell by the door, while Pickens entered the residence.

When the gun was found in the closet, Killian could hear Pickens question Cody's mother about who owned it. Then Cody said "That's my gun. That's mine." Cody was not being questioned at the time. Eventually, Cody was taken outside and placed in the back of Pickens's cruiser.

On cross-examination, Killian testified that two other officers were in the back of the house. Killian stated that the dispatch information he received was that Cody's brother was in the residence.

The government's last witness was Glen Morrell ("Morrell"), an investigator with KPD. He testified that when he arrived on the scene, crime lab was already there and Cody was in a KPD cruiser. Morrell "Mirandized Cody" and asked him about the gun found in the residence. Cody agreed to answer questions. Cody said he bought the gun from a guy in Karns. Cody said he paid $400 for it. Morrell said he did not write a report on his interview with Cody.

On cross-examination, Morrell testified that Pickens and Killian were in uniform and were armed. Morrell said that the sweep of the apartment occurred before he arrived on the scene.

Morrell testified that he did not take a written statement from Cody. Morrell gave Cody his Miranda rights in the KPD cruiser, but the conversation was not recorded on the microphone inside the vehicle.

## II. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend IV. The Defendant contends that the firearm, which police seized during a protective sweep of an apartment, must be suppressed because it is the fruit of the officers' illegal search. Cody

5

broadly argues that the warrantless search of the apartment was unreasonable under the Fourth Amendment. The Government contends that the firearm was recovered during the course of a valid protective sweep. The Government also argues that the initial statement made by Cody that the gun was his was voluntary, and that the subsequent admission of gun ownership followed a waiver of Miranda rights.

      **A.     The Protective Sweep of the Apartment**

There are some circumstances in which a warrantless search may be reasonable. Maryland v. Buie, 494 U.S. 325, 331 (1990). One such situation is that of a protective sweep, in which police officers conduct a cursory search of the premises in conjunction with an arrest to determine the presence of dangerous persons within the house. Id. at 333. Buie holds that a protective sweep unaccompanied by a search warrant and incidental to arrest must be supported by "articulable facts. . . and rational inferences from those facts" that lead officers to believe that the premises harbor dangerous individuals. Id. at 334. Buie allows the protective sweep to extend to any area in which a person could be found. Id. At 335.

The government cites the Court to United States v. Stover, where police officers conducted a protective sweep of the defendant's residence without a warrant after seeing that a car registered to another person was parked in his driveway. United States v. Stover, 474 F.3d 904, 911-912 (6th Cir. 2007). The protective sweep was permissible because the circumstances pointed to the presence of other potentially dangerous individuals at the residence. Id. At 912.[1]

The Defendant cites the Court to United States v. Archibald, 589 F.3d 289 (6th Cir. 2009).

---

[1] During argument, the Government stated that it was not relying on Cody's mother's "consent" to sweep the apartment as a ground for finding that the sweep was lawful. Therefore, the Court does not analyze the issue from that standpoint.

6

In that case, police officers went to the defendant's residence to serve him with arrest warrants. Prior to arriving at the defendant's residence, officers learned that the defendant had previously been charged with attempted homicide, weapons offenses, and resisting arrest, among other charges. After officers knocked on the defendant's door, they heard the sound of someone moving about inside the residence. They heard one voice speak inside the residence. The officers had no reason to conclude that there was more than one person inside the residence. Id. At 292. Archibald opened the door, and the officers immediately pulled him outside and arrested him on the front porch. Officers looked inside and could see no one else inside the residence. Officers proceeded to enter the residence, conducted a protective sweep, and while so doing, found illegal narcotics in plain view in the kitchen. The Archibald court, citing Buie, found that the officers did not have a specific and reasonable belief that another person was present in the residence and posed a danger. Id. at 299. Accordingly, the Court held the protective sweep to be unlawful. Id. at 301.

The Court finds that the protective sweep in this case does not violate the defendant's Fourth Amendment rights, because it was necessary to ensure officers' safety following a lawful arrest. Like the search in Buie, 494 U.S. at 334, the officers' protective sweep of the defendant's residence was incidental to an arrest. The Defendant Cody was quickly arrested and restrained when he answered the door. However, the information the officers had received from dispatch told them that Cody's brother was in the residence and that guns were in the residence. A protective sweep, which included the hallway closet, therefore was reasonable for officers' safety. In Stover, a protective sweep was justified because the presence of a vehicle not registered to the defendant in the defendant's driveway qualified as an articulable fact substantiating arresting officers' beliefs that other individuals were present in the defendant's home. 474 F.3d at 911-912. Similarly, in this case,

7

the protective sweep was justified because the reported presence of the defendant's brother in the apartment, along with firearms, could lead the officers to legitimately fear for their own safety.

Citing <u>Archibald</u> and <u>Buie</u>, Cody argues that the police officers did not have specific facts that the brother in the apartment was a "dangerous person;" that they had no identity and no criminal history on the brother; and that they just assumed the brother was dangerous for "practical (albeit understandable) reasons."

<u>Archibald</u> does not invalidate the protective sweep in this case, because the police officers' protective sweep occurred as a result of information provided to them by dispatch that the defendant's brother was present in the apartment. The dispatch information that Cody's brother was in the apartment, along with guns, is sufficient to bring the case within <u>Buie's</u> requirements. The fact that the protective sweep revealed the firearm, but not the brother, is irrelevant.

<u>United States v. Pruitt</u>, 458 F.3d 477, 478 (6th Cir. 2006), provides for the admissibility of evidence obtained in the course of a protective sweep. Because the protective sweep occurred in the course of a lawful arrest and was supported by specific and articulable facts, there is no reason to suppress evidence obtained as a result of the sweep.

**B.    The Defendant's Statements**

Evidence, including statements by defendants, should be suppressed as fruit of the poisonous tree if such evidence is obtained during the course of an unlawful search. <u>Wong Sun v. United States</u>, 371 U.S. 471, 488 (1963). The Court has held that the protective sweep conducted by the KPD officers was reasonable and lawful.

Moreover, Cody's statement to police officers regarding his ownership of the firearm was voluntary and not the result of questioning by police. The voluntary nature of Cody's statement is

8

determined by analyzing the "totality of all the circumstances" surrounding the statement. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). In this case, there are no facts to suggest that Cody's initial admission of gun ownership was anything other than voluntary.

The Defendant's second statement of ownership of the firearm was made while he was seated in a police cruiser. The Defendant was read his Miranda rights and validly waived them. The Court credits the testimony of KPD Investigator Morrell. There is no reason to suppress evidence of this statement.

### III. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing, and after reviewing the relevant legal authorities, it is clear that there is no basis to suppress any evidence seized in this case. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence Obtained as a Result of the Warrantless Search of the Defendant's Residence on January 23, 2012 [Doc. 15] be **DENIED**.[2]

Respectfully submitted,

    s/ H. Bruce Guyton
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).